UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNTIED STATES OF AMERICA,

                    Plaintiff,

vs.                                    Case No.  2:09-cv-214-FtM-29SPC

TRACT J26-25, 5.0 ACRES OF LAND,
MORE OR LESS, IN COLLIER COUNTY,
FLORIDA, DAVID H. KNOWLES, ET AL.,

                    Defendant.
_____


**OPINION AND ORDER**

     This matter came before the Court on September 8, 2010, for a
bench trial on the matter of just compensation in this case, and
six other condemnation proceedings.  All parties known or believed
by plaintiff to have an interest in the property were properly
served or notified as provided by Fed. R. Civ. P. 71.1.  After the
conclusion of the trial, the Court was notified that Alma Kemp, a
claimant in this case, had appeared and wished to present
testimony.  The Court initially heard from Ms. Kemp, and the trial
was reset for October 18, 2010, to allow Ms. Kemp to prepare and
present evidence, and for the government to re-present its case as
to the valuation of the subject property with Ms. Kemp present.

**I.**

     On September 8, 2010, the Court heard testimony from John R.
Underwood, President and owner of Appraisal and Acquisition
Consultants, Inc., where Mr. Underwood has been working as an

appraiser and supervisor of other appraisers since the early 1980s.
Mr. Underwood testified on behalf of the government regarding the
appraised value of the parcels of land subject to condemnation
proceedings.   Mr. Underwood started his career as an appraiser
working for First Federal Savings & Loan of Lake Worth, Florida,
and eventually started his own firm.   Mr. Underwood took all
required courses for his professional designations.  Mr. Underwood
received his MAI (general) designation in 1981 or 1982, which
requires experience, required courses, a demonstration report (akin
to a Masters thesis), peer review, and a comprehensive exam.  Mr.
Underwood also received his SRA (residential) designation in 1979,
from the Appraisal Institute, which has similar requirements but
requires less experience and no comprehensive exam.  Mr. Underwood
has taught classes and has been on the faculty of the Appraisal
Institute since the early 1980s.   Mr. Underwood has previously
testified more than 150 times in condemnation proceedings,
including as to the Everglades National Park and the Big Cypress
project.

Mr. Underwood inspected the subject land by air to conduct
appraisals using social and economic considerations. Mr. Underwood
testified as to the common characteristics of the land as:  (1)
remote; (2) of critical concern to the state; (3) wetlands; (4)
difficult to access; and (5) unimproved.   To determine market
value, Mr. Underwood used a sales comparison approach, which is a

theory of substitution, by comparing 10 public record sales and finding values ranging from a low of $800.00 to a high of $2,000.00. Mr. Underwood noted that the sales in the wetlands can be skewed and somewhat overvalued due to internet sales to unknowing buyers, and that subject land has the highest and best use of passive recreational. Mr. Underwood concluded that the fair market value for the subject land was $1,500.00 per acre, or $7,500.00 for the 5.0 acres involved in this case.

After the government rested, claimant Alma Kemp appeared and requested that a fair and reasonable valuation would provide each claimant $3,000.00. Ms. Kemp stated that there are 35 claimants, however she would be satisfied if the claimants in the Bahamas were excluded leaving 9 family member claimants. Ms. Kemp requested the future value of the property asserting that the land will not always be under water. Ms. Kemp requested approximately one month for her gather her evidence and witnesses consisting of surrounding landowners that Ms. Kemp asserts have received more monies. The request was granted.

**II.**

On October 18, 2010, Mr. Underwood testified for the government, reiterating his long history and background conducting appraisals. Mr. Underwood stated that he has previously testified in many condemnation proceedings and appraised all sorts of properties in Florida, including 1000 parcels in the Everglades and

Big Cypress National Parks.

For the subject parcel of land, Mr. Underwood conducted the appraisal by air because it is inaccessible except for some dirt tracks in the general area of the parcel which do not flow directly to the parcel.  Mr. Underwood explained the three possible methods to conduct an appraisal:  the cost approach, income approach, and the sales approach.  The cost approach was rejected because there are no improvements on the land for a replacement cost determination.  The income approach was similarly rejected because the property as no development value.  Therefore, the sales approach was used and parcels in the Fakahatchee Strand provided the best comparisons.

On cross-examination, Ms. Kemp raised the issue of replacement cost arguing that if nothing has to be undone on the property, there should be some value attached to savings associated with not having to remove improvements.  Ms. Kemp also raised the fact that the Everglades are not replaceable, are unique in value.

Ms. Kemp submitted three exhibits and testified.  The first exhibit reflects nearby sales figures from the Collier County Property Appraiser's website for sales that occurred in the 1990s. (Exh. 1.)  Ms. Kemp indicates that one of the parcels, half the size of the parcel at issue here (2.5 acres), sold for $13,750.00 in 1995, while another of equal size to the parcel in this case sold for $500.00.  Ms. Kemp has been maintaining the taxes on the

property.  The second exhibit consists of past correspondence with counsel and the National Park Service over the years.  (Composite Exh. 2.)  The third exhibit was an Individual Offer to Sell Real Property to the National Park Service signed on December 6, 1999. (Exh. 3.)

Ms. Kemp expressed that the property was purchased in 1963, and she always thought she would one day move out there.  Ms. Kemp states that she has suffered personal disappointment that she will not get to live there or retire there, but that she will be the first one to visit the park once it is re-opened.  Ms. Kemp expressed that $20,000.00 would be a more reasonable settlement for the value associated with the property.

In response, Mr. Underwood was recalled to testify that a lot of the 1991 to 1997 sales were internet sales to innocent buyers for inflated prices so the valuation by the government was based only arms-length transactions.  The government used comparisons from 1990 through a comparable sale in March 2010.

### III.

"Just compensation means the full monetary equivalent of the property taken. . . . [T]he [Supreme] Court at an early date adopted the concept of market value:  the owner is entitled to the fair market value of the property at the time of the taking." United States v. Reynolds, 397 U.S. 14, 16 (1970)(citations omitted).  Comparable sales at the time of the taking is still the

best evidence of fair market value.  See generally United States v.
45,131.44 Acres of Land, 483 F.2d 569 (10th Cir. 1973); United
States v. 320.0 Acres of Land, 605 F.2d 762 (5th Cir. 1979); United
States v. 47.14 Acres of Land, 674 F.2d 722 (8th Cir. 1982); United
States v. 819.98 Acres of Land, 78 F.3d 1468 (10th Cir. 1996);
United States v. 4.85 Acres of Land, 546 F.3d 613 (9th Cir. 2008).

A taking for public use allows the government to essentially
"confiscate[] the additional (call it "personal") value" that an
owner obtains from the property as long as market value is paid and
the taking is in fact for public use.  Coniston Corp. v. Village of
Hoffman Estates, 844 F.2d 461, 464 (7th Cir. 1988).  See also
Kimball Laundry Co. v. United States, 338 U.S. 1, (1949)(describing
personal value as "the burden of common citizenship"); 320.0 Acres
of Land, 605 F.2d at 782 n.24 ("Value unique to the Owner is not
compensable either.").

In considering valuation of the property, elements considered
"too speculative and conjectural", for example commercial
viability, should be excluded from consideration.  Eagle Lake
Improvement Co. v. United States, 141 F.2d 562, 564 (5th Cir.
1944)[1](citing Olson v. United States, 292 U.S. 246, 257 (1934)).
See also St. Genevieve Gas Co. v. Tennessee Valley Auth., 747 F.2d

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.
1981) (en banc) the Eleventh Circuit adopted as binding precedent
all the decisions of the former Fifth Circuit handed down prior to
the close of business on September 30, 1981.

1411, 1413-14 (11th Cir. 1984).

### IV.

The public purpose of the taking is not disputed in this case, only the valuation of the property.   The Court has carefully considered the testimony and evidence presented, and concludes that Ms. Kemp is a rightful claimant.   Although Ms. Kemp expressed disappointment that she will not be able to take up residence on the property, the Court cannot attach a monetary value to this personal attachment to the land.   Additionally, the highest and best use of the land is passive recreational, and any speculation of future commercial viability or that the Everglades may no longer be wetlands is too speculative a consideration.   The Court concludes that the fair market value is $1,500.00 an acre.

The Court, having considered the testimony and other evidence, hereby **ORDERS AND ADJUDGES:**

1.   The Plaintiff has the right to condemn the subject properties for the public purpose set forth in the Complaint in Condemnation.

2.   Just Compensation for the taking of the fee simple title to Property, is **$1,500.00 per acre**, for a total value of **$7,500.00.** Payment of the Just Compensation will be in full satisfaction of any and all claims of whatsoever nature against the Plaintiff by reason of the institution and prosecution of this action and taking of the subject properties.

3.  Plaintiff will deposit the Just Compensation determined at trial into the Registry of the Court within **SIXTY (60) DAYS** of this Order.  The Clerk shall administratively close the file pending the entry of final judgment.

4.  On the date of the deposit of the Just Compensation into the Registry of the Court, title to the Property will vest in the Plaintiff and the Plaintiff will be entitled to immediate possession of the Property.  Upon making such deposit, Plaintiff will timely notify the Court and move for a final judgment of condemnation by filing a motion.

5.  The Just Compensation will be subject to all real estate taxes, liens and encumbrances of whatsoever nature existing against the Property at the time of vesting the title thereto in the Plaintiff and all such taxes, liens, encumbrances of whatsoever nature will be payable and deductible from the Just Compensation.

6.  The Clerk of the Court will retain the deposited Just Compensation until further Order of this Court upon consideration of any applications for distribution filed by persons claiming or asserting an interest in the Just Compensation.  Plaintiff's counsel shall notify the Clerk of the Court as each remaining case reaches a **zero balance** so that the case may be closed.

7.  In the event that the Just Compensation and any interest, or any part thereof, remains unclaimed for a period of **FIVE (5) YEARS** from the date of this Opinion and Order, the Clerk of the

Court, pursuant to 28 U.S.C. § 2042, will cause such sum, together with any interest, to be deposited in the United States Treasury in the name and to the credit of the United States of America or the National Park Service, as appropriate.

**DONE AND ORDERED** at Fort Myers, Florida, this ___26th___ day of October, 2010.

 

_____
JOHN E. STEELE
United States District Judge

Copies:
Kyle Scott Cohen, AUSA
Parties of record

Intake
Finance